**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MAHMOOD YOUSEF,

        Petitioner,

    v.

MARKWAYNE MULLIN, ET AL.,

        Respondents.

Case No. 8:26-cv-01280-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

**I.**

**INTRODUCTION**

On May 21, 2026, Petitioner Mahmood Yousef ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Petition"), challenging his detention in immigration custody.  (Dkt. 1 at 2.)  On May 29, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Todd Blanche, Acting Attorney General, Andres Quinones, Los Angeles Field Office Director, Immigration and Customs Enforcement ("ICE"), Warden of the Adelanto Detention Center, DHS, Executive Office of Immigration Review, and

ICE (collectively, "Respondents") filed an Answer to the Petition (the "Answer") advising that "[t]he Respondents are not presenting an opposition argument at this time." (Dkt. 9 at 2.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 4, 7.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on his prior Order of Supervision ("OSUP").**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the allegations in the Petition, which is verified by counsel. (Dkt. 1 at 32.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 9.) To the contrary, "[t]he Respondents are not presenting an opposition argument at this time." (Id. at 2.) Accordingly, the Court considers these facts to be undisputed and conceded by Respondents. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a 23-year-old immigrant who arrived in the United States from Syria in May of 2024. (Dkt. 1 at 2.) He was detained at the border and placed in removal proceedings. (Id.) On March 5, 2025, an immigration judge granted Petitioner "withholding of removal"—a form of protection from removal to Syria due to the likelihood that Petitioner would face persecution there on account of his sexual orientation. (Id.) Despite this grant of protection, Petitioner remained in immigration detention for over eleven more months, until April 25, 2026, when he was released by ICE on an OSUP. (Id.) Petitioner moved to Anaheim, California and reported to ICE in Santa Ana, California as instructed. (Id.)

On May 19, 2026, Petitioner received a call to report to ICE the next morning for a check-in at the Santa Ana Field Office. (Id.) At this check-in on May 20,

2

2026, Petitioner was detained.  (Id.)  Petitioner was told that immigration authorities were likely deporting him to "somewhere in Africa."  (Id.)  Petitioner asked the ICE officer what country in Africa they were trying to deport him to.  (Id. at 8.)  The officer responded something to the effect of, "maybe Ghana. I don't know."  (Id.)  Petitioner asked about any scheduled flights, and the officer responded that he did not know.  (Id.)  Petitioner is currently detained at the Adelanto ICE Processing Center in Adelanto, California.  (Id. at 2.)

### III.
### SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) is that his current detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231, and 8 C.F.R. § 241.13 because Respondents have not shown that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. (Dkt. 1 at 12-18.)  Petitioner's second claim for relief (Count Two) is that the revocation of his OSUP violated the Due Process Clause of the Fifth Amendment and 8 C.F.R. § 241.13 because Respondents did not comply with their own regulations to provide notice or an informal interview.  (Id. at 18-21.)  Petitioner's third claim for relief (Count Three) is that his intended removal to a third-country violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231 because Respondents have not provided sufficient notice or a meaningful opportunity to identify and raise fear-based claims regarding possible threats to Petitioner's safety and life.  (Id. at 21-28.)

Petitioner seeks immediate release from custody on his prior OSUP and an order enjoining Respondents from re-detaining him under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for Petitioner's removal.  (Id. at 28-29.)  Petitioner also seeks an order enjoining Respondents from re-detaining him without first following all procedures set forth in 8 C.F.R. §§ 241.4, 241.13, and

any other applicable statutory and regulatory procedures.  (Id. at 29.)  Petitioner also seeks an order enjoining Respondents from removing him to a third country unless Respondents provide Petitioner and his counsel with a minimum of ten days to raise a fear-based claim for protection prior to removal, and if Petitioner does assert a fear-based claim for relief from removal, Respondents must move to reopen proceedings to provide Petitioner a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process.  (Id.)  Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley,

4

133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful

description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

**V.**

**ANALYSIS**

It is undisputed that Petitioner arrived in the United States from Syria in May of 2024, was detained and placed in removal proceedings, and subsequently was granted withholding of removal to Syria. (Dkt. 1 at 2.) It is further undisputed that on April 25, 2026, Petitioner was released from immigration custody on an OSUP. (Id.) Thus, the Court concludes that once Petitioner was released from custody on conditions, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

It is also undisputed that on May 20, 2026, Petitioner was detained without prior notice or a pre-deprivation hearing at his scheduled ICE check-in. (Dkt. 1 at 2.) Petitioner was told that immigration authorities were likely deporting him to

6

"somewhere in Africa," but the ICE officer did not know which country or whether any flights had been scheduled.  (Id. at 2, 8.)  Thus, the Court concludes that Petitioner's detention by ICE on May 20, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release on his OSUP.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the

first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").  And before Respondents may increase the conditions or amount of Petitioner's prior OSUP, Respondents must show a material change of circumstances that require the increased conditions or amount.  See, e.g., Duong v. Kaiser, 800 F. Supp. 3d 1030, 1042 (N.D. Cal. 2025) ("Where an individualized assessment of flight risk and dangerousness has been made and bond granted, courts follow the Board of Immigration Appeals in requiring a 'material change of circumstances' before bond can be revoked or modified.").

Additionally, given the recent attempt to remove Petitioner to a third country without prior notice, the Court further concludes that Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal. See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)."). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019. Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due

9

process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025).

The Court notes that "[t]he Respondents are not presenting an opposition argument at this time." (Dkt. 9 at 2.) Therefore, Respondents have consented to the relief requested by Petitioner. See C.D. Cal. L.R. 7-12. Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA. (Dkt. 1 at 29.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Mahmood Yousef (A# 249-045-838) from custody on his prior Order of Supervision ("OSUP") and return any confiscated property and documents upon release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and

convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall not increase the amount or conditions of Petitioner's OSUP without providing at least seven (7) days' notice and a pre-deprivation bond hearing before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that there is a material change of circumstances that require the increased conditions or amount. Respondents shall not attempt to remove Petitioner to any country other than Syria without first providing written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3).  Respondents shall place a copy of the Judgment in Petitioner's A-File. Respondents shall file a notice of compliance no later than three days from entry of Judgment.

IT IS SO ORDERED.

DATED:   June 1, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

11